# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

GLENN WHITING,
Plaintiff,

v.                                                    Case No. 3:23-cv-      /JURY DEMAND

CITY OF ATHENS, MIKE KEITH, and
BRANDON AINSWORTH,
Defendants.

# COMPLAINT

Comes now the plaintiff Glenn Whiting by and through his attorney Van R. Irion, and bring this complaint for damages, including punitive damages, and injunctive relief against the defendants above-identified defendants, and in support thereof states as follows:

**Parties**

1.     Plaintiff Glenn Whiting is an individual, and a Tennessee citizen, with a primary residence in McMinn County, TN.

2.     Mr. Whiting is not a public figure.

3.     Mr. Whiting has never held public office and has never run for any public office.

4.     Defendant Mike Keith is an individual currently residing in Athens, TN. Defendant Keith was the Interim City Manager for Athens at all times relevant to this lawsuit. Defendant Keith is sued in his official and in his individual capacities. The Athens Charter establishes that a City Manager is the final authority regarding implementation of overall City policy. Keith's duty to implement City policy included authority to change City policy as that policy applied to specific circumstances.

1

5.     Defendant City of Athens is a governmental entity, legally empowered to sue and be sued, formed pursuant to the laws of the State of Tennessee, and located in McMinn County, Tennessee.

6.     Defendant Brandon Ainsworth is an individual and Chief of the Fire Department for the City of Athens. As a Department Head Ainsworth had authority to make policy for his Department, subject only to the general policies promulgated by the City Council and City Manager. Specifically, the Fire Chief has authority to make policy regarding the way Fire Department employees implement City Policy, such as instructing firefighters when and how to deploy equipment, and limitations on same. Additionally, the Fire Chief has authority to establish Fire Department policy regarding acceptable and unacceptable behavior of firefighters. Defendant Ainsworth is sued in his official and in his individual capacities.

**Jurisdiction and Venue**

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Remedies are provided by 42 U.S.C. § 1983.

8.     Supplemental subject matter jurisdiction for State-law claims is provided for by 28 U.S.C. §§ 1367.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events that form the basis for this Complaint primarily occurred in this district.

**General Allegations**

10.     Upon information and belief, defendant Keith made false statements about the plaintiff to numerous third parties, including members of the press and television media, with knowledge that said statements were false. Specifically, defendant Keith told members of the media that the

City of Athens had cancelled its annual fireworks display because plaintiff Whiting had filed lawsuits against the City.

11. Upon information and belief, said false statements were made on or about May 18, 2023.

12. Upon information and belief, said false statements were made at the Athens Municipal Building, located at 815 N. Jackson St., Athens, TN.

13. Said false statements were intended to punish plaintiff Whiting for filing lawsuits against the City of Athens and its agents.

14. Said false statements were also intended to prevent and/or discourage the plaintiff from filing legitimate lawsuits against the City.

15. Said false statements were also intended to prevent and/or discourage the plaintiff from petitioning the government for redress of grievances.

16. Previous City Attorney Chris Trew had already advised City employees, in writing, to ignore communications from plaintiff Whiting regarding public records requests and other petitions to the City government, and to not respond to said requests and petitions.

17. Defendant Keith's false statements have damaged plaintiffs' reputation in the Athens/McMinn County community, have exposed the plaintiff to public hatred, contempt, or ridicule, or have lowered him in the eyes of the community, and have caused the plaintiff personal humiliation and mental anguish, and has harmed the plaintiff's reputation in the eyes of the community.

18. Upon information and belief defendants Mike Keith, Brandon Ainsworth, and other Athens policy-makers conspired to use their governmental authority, under color of law, to punish Whiting in retaliation for Whiting's filing of legitimate lawsuits against the City.

3

**Retaliation for Filing Legitimate Lawsuits**

19.     On May 18, 2023, the interim Athens City Manager, Mike Keith, contacted local media, including the Daily Post Athenian and ABC Channel 9 News, and reported that the City had cancelled the 2023 Athens fireworks show in response to Glenn Whiting's lawsuits. Channel 9 reported: "There won't be any fireworks at the Athens Regional Park on July 4th this year, and we now know the reason why. A man's pending lawsuit against several city officials over what happened at last year's event is cited as the reason. We obtained that lawsuit on Wednesday, which you can read in full below." The report then links to the original complaint in the instant lawsuit, and extensively quotes same.

20.     Interim City Manager Mike Keith was cited by the media as the source of information.

21.     Pursuant to the Athens City Charter, the City Manager is a final decision-making and policy-making authority for the City.

22.     Prior to defendant Keith's announcement he met with Fire Chief defendant Brandon Ainsworth. Ainsworth informed Keith that he did not want to, or possibly that he refused to, order Athens firefighters to provided emergency protection at the 2023 Independence Day event.

23.     Keith's intent in making the announcement was to place sole blame upon Mr. Whiting for the City's cancellation of the annual fireworks event. Keith's intent was also to create public pressure upon Mr. Whiting in order to force Whiting to dismiss his legitimate lawsuits.

24.     Keith's actions succeeded in bringing public pressure upon Whiting to dismiss his lawsuits. Specifically, a representative of the companies that sponsor the fireworks event called Whiting and urged Whiting to dismiss all of his lawsuits against the City in order to allow the 2023 fireworks to proceed. A representative of the company that provides liability insurance to the City for the annual event also contacted Whiting and pressured him to dismiss his lawsuits

4

for the same reason. Numerous members of the public have contacted Whiting directly with similar messages. Even more members of the public have posted comments on social media sites both blaming Whiting for the cancellation and urging him to dismiss his cases. Since the media stories aired other Athens agents have contacted Whiting and made similar requests.

25.     City Manager Keith's act of falsely publically blaming Whiting as the sole reason for the City's cancellation of its 2023 fireworks show is just the latest in the City's "entire campaign of harassment," directed at Whiting. Previous acts in said campaign include Mayor Sherlin's March and April false public statements about settlement attempts made by Whiting and the City, the bad-faith negotiations made in November and December of 2022 by newly elected Athens City Council Members, the July 4, 2022 harassment of Whiting at the Athens Regional Park, and numerous other acts of retaliation against Whiting by the City in retaliation for Whiting exercising his constitutionally protected rights. Details of this previous harassment are set forth below.

26.     An ordinary citizen would have withdrawn his lawsuits under the pressure applied to Whiting via the City's retaliatory action. However, Whiting is not an ordinary citizen. Whiting informed all individuals who contacted him that he would not be extorted by public pressure from the City to dismiss his legitimate petitions to the government for redress of grievances.

27.     On May 24, 2023, the Athens City Council held a special meeting and voted to rescind the City Manager's previous cancellation of the 2023 fireworks. The Council also voted at the same meeting to fund the fireworks in an amount of $45,000.

28.     In other words, plaintiff Whiting legitimately petitioned the government for redress of grievances; the government entity from which Whiting requested redress then took action to retaliate against Whiting and pressure Whiting to withdraw his petitions, claiming that Whiting's

5

lawsuits prevented the City from hosting another fireworks display; Whiting refused to be extorted; and then the City then withdrew its threat, proving that the City could host the display despite Whiting's legitimate petitions to the government. However, the damage caused by the City's actions was already done. Many citizens of Athens continue to believe that the July 4, 2023, fireworks at Athens Regional Park have been cancelled because of Whiting's lawsuit.

29.     City Manager Keith's attempt to convince the public that Whiting's lawsuits were the sole reason the City cancelled its Independence Day fireworks, was malicious, harmful, and is not true. Keith's public defamation of Whiting is just the latest in "an entire campaign of harassment." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982). The other incidents of harassment by the City and its agents are set forth below.

**Incident of July 4, 2022**

30.     The City of Athens closed the Athens Regional Park to the public for its 2022 Independence Day celebration and fireworks show. City employees were given tickets to enter said park during said event and to allow said employees to invite family and friends to said event.

31.     The decision to close the Athens Regional Park to the public during the Athens fireworks event on Independence Day, 2022, was controversial. Athens City Council Member Dr. Dick Pelley openly and publically opposed closing the park to the public. After the City's decision to close the park Dr. Pelley gave plaintiff Whiting a ticket to enter the park during the event as a guest of Council Member Pelley. Whiting's intent was to simply walk the park during the event in order to video record the event so that the excluded Athens citizens could know what their City employees were doing in the closed park during the event.

6

32.     Upon information and belief, defendants Seth Sumner, Bo Perkinson, Brandon Ainsworth, and other Athens policy-makers were aware at least several days before July 4, that Council Member Pelley had given his tickets to the Independence Day event to Mr. Whiting.

33.     Upon information and belief, defendants Seth Sumner, Bo Perkinson, Brandon Ainsworth, and other Athens policy-makers conspired to encourage Athens employees to harass Mr. Whiting. Specifically, said defendants informed Athens employees, including several of the named defendants herein, that plaintiff Whiting intended to attend, video tape, and report City activities at the July 4 City event at the closed Athens Regional Park. Said defendants instructed said Athens employees to harass Mr. Whiting. Said defendants made false and defamatory statements about plaintiff Whiting to Athens employees. Specifically, upon information and belief, defendants Sumner, Perkinson, and Ainsworth told City employees that Whiting intended to video tape children in the park for prurient purposes. These actions by Sumner, Perkinson, and Ainsworth were intended by same to prevent Whiting from attending, recording, and reporting the City's event. Additionally, these actions were intended to punish Whiting if Whiting refused to be excluded from the event due to City employee harassment. In other words, said punishment was retaliation for Whiting's expressive actions of attending, recording, and reporting the City's event.

34.     On the afternoon of July 4, 2022, hours before the event at the park began and miles from the park, two Athens Police officers began discussing Glenn Whiting. To Whiting's knowledge neither had ever met Mr. Whiting before. At the time of the conversation the Officers were performing their duties, and there was no reason to prompt a conversation about Whiting. In other words, the Officers brought up Mr. Whiting spontaneously during the course of their other duties. The Officers conversation confirmed that they expected Whiting to show up at the Athens

Regional Park for the Independence Day event. The Officer's conversation confirmed that they expected "trouble" in association with Whiting's visit to the park. Upon information and belief, one or more of defendants Ainsworth, Sumner, and/or Perkinson informed the Police Officers that Whiting was going to attend the event and that he was going to cause trouble. Upon information and belief, one or more of defendants Ainsworth, Sumner, and/or Perkinson instructed the Police Officers to keep an eye out for Whiting at the event, and to prevent Whiting from recording any part of the event if possible. Later, at the park, another Athens Police Officer upon learning that Whiting was already in the park, stated "How did he get in without us noticing? We were watching for him."

35.    A video of plaintiff Whiting's visit to the park during said event reveals numerous City employees, and their family members, repeatedly harassing, threatening, assaulting, impeding, and cursing plaintiff Whiting. Included in said harassment are accusations that Whiting was attempting to videotape children, accusations that Whiting is a "pervert," accusations that Whiting was violating the law, and threats of violence against Whiting. Upon information and belief, defendant Tyler Hicks is the individual who shouted that Whiting is a pervert.

36.    Upon information and belief, said City employees and their family members who harassed Whiting, had never met plaintiff Whiting prior to July 4, 2022, with the one exception being Jamison Sliger.

37.    Upon information and belief, defendants Chad Ramsey, Cody Williams, and Gregory Gable, all verbally harassed Mr. Whiting at the park on July 4, 2022.

38.    Said harassment and threats began immediately upon Whiting arriving at the park and exiting his vehicle, and continued until Whiting departed.

8

39.     Immediately upon exiting his car Whiting was confronted by defendant Jameson Sliger. Sliger works in the Athens Parks & Recreation Department. Sliger is the only City employee Whiting encountered that day who Whiting had previously met. Defendant Sliger asked Whiting, in a threatening tone, why he was there. Whiting answered, "Fireworks." Sliger then asked, "Are you taking pictures." Whiting answered "Streaming," indicating his phone. Sliger immediately informed Whiting that Whiting was not allowed to photograph or video record any children at the park. Sliger later yelled at Whiting repeatedly telling him to "Get out of here!" Sliger had no reason to believe that Whiting would be "taking pictures," nor did he have any reason to care, absent instructions from a named defendant.

40.     Upon information and belief, defendant Chad Ramsey was on duty as an Athens firefighter and was in uniform the evening of July 4, 2022. Defendant Ramsey spotted Whiting and immediately climbed down off a fire engine, walked a significant distance across the park, at a very fast pace, and confronted Whiting. Ramsey challenged Whiting's recording of the event. Upon approaching Whiting his first statement was, "You're not going to film our kids." Based upon where Ramsey was located and the timing of his approach, Ramsey could not have heard other individuals mentioning recording children prior to his statement.

41.     Defendant Rod Walker approached Whiting, blocking Whiting's progress, threatened Whiting, and grabbed Whiting's phone twice in an attempt to take the phone away and prevent Whiting from continuing to video record the event. Walker told Whiting that Whiting would not be allowed to video kids.

42.     While Rod Walker assaulted Whiting, Rod's son defendant Seth Walker, an Athens Firefighter, stood next to Whiting grabbed Whiting's shoulder, holding Whiting in place while Rod Walker told Whiting that Whiting would not be allowed to video kids.

9

43.    Defendant Ty Gable also physically pushed Whiting shoulder to shoulder, forcing Whiting to change directions. Gable also stated that Whiting cannot video children.

44.    Defendant Deb Cardin yelled "don't fucking video tape kids in the goddamned park. Don't let me catch you doing it again…Get the fuck out of here!"

45.    While Whiting was walking around police were called to the scene. Officer Jim Garland, Athens badge number 132, was approached by Rod Walker whom stated, "You know who it is." Garland responded, "No, who is it?" Rod Walker responded, "It's Glenn Whiting." Officer Garland responded, "How did he get in here, we were watching for him." Shortly after officer Garland approached Whiting and stood in front of Whiting, blocking Whiting's passage, and falsely informed Whiting that he was violating the law. Garland informed Whiting that he could not video tape children in the park. Garland informed Whiting that if Whiting's actions disturbed any other people in the park, then Whiting was violating the law and must stop or be removed. This statement is the opposite of what U.S. Supreme Court precedent establishes regarding what the Court refers to as a "heckler's veto." *See* Reno v. ACLU, 117 S.Ct. 2329, 2349 (1997). Defendant Garland stated that Whiting was filming children, and that that was illegal.

46.    None of the Athens Police Officers nor any Firefighters made any attempt to protect Whiting from threats, assaults, and batteries, nor did they make any attempt to defend Whiting's right to record the event, or inform Whiting's harassers that he was acting within the law, even after one of the officers, Corporal Parson, acknowledged that Whiting was within his rights to record the event. Parson did tell Whiting that Whiting's activity was "kinda creepy."

47.    Other unidentified City employees and family members of City employees at the park accused Whiting of video-taping children. Said unidentified individuals were too far from others to have heard the accusations regarding children. In other words, several groups of City invitees

independently and consistently all made the same false accusation. Upon information and belief, this consistent identical false accusation arose from defendants Sumner's, Perkinson's, and Ainsworth's false statements about Whiting to City employees and encouragement of employees to harass Whiting with said false accusation.

48.     Upon information and belief, <u>all named defendants</u> harassed plaintiff Whiting in an attempt to dissuade Whiting from recording, speaking about, and reporting the July 4th event, and to punish Whiting for same.

49.     Defendant Ty Gable walked next to Whiting, physically bumping and pushing Whiting, sufficient to cause Whiting to change Whiting's direction of walking, while stating that his purpose was to prevent Whiting from video-taping children.

50.     Defendant Deb Cardin threatened Whiting and repeatedly ordered him to stop recording. She then blocked Whiting's progress.

51.     Because of the actions of all defendants described herein, plaintiff Whiting was prevented from video taping individuals at the park during the event.

52.     Because of the actions of all defendants described herein, plaintiff Whiting was in reasonable fear of physical violence if he continued to report on the event.

53.     Other individuals in the park were video-taping the event. One such individual was Ford Ector.

54.     Upon information and belief, other Athens employees posted photos and videos of the event on public web sites, including photos and videos of children at the event.

55.     Upon information and belief, none of the Athens employees identified in this complaint have been disciplined in any way for the acts described herein. The City has made zero effort to begin any disciplinary action against said employees. Upon information and belief, this failure to

discipline said employees is due to the fact that said employees were instructed to act as they did by defendants Sumner, Perkinson, Ainsworth, and other Athens policy-makers.

56.     Upon speaking with defendant Ainsworth about disciplining the firefighters involved, Ainsworth stated to Mr. Whiting that "there is nothing to discipline."

**November and December 2022 Harassment Regarding Settlement**

57.     The Athens City Council has only 5 members. In November 2022 two new members were elected to the Athens City Council: defendant Steve Sherlin and Larry Eaton took office at the November 2022 regular monthly meeting of the Council. Incumbent Member Dr. Dick Pelley was re-elected. Only three members voting for a settlement is required to approve said settlement. Immediately after the election plaintiff Whiting communicated with Eaton, Sherlin, and Pelley regarding possible settlement of then-current lawsuits Whiting had against the City, as well as settlement of the instant lawsuit prior to its filing. After some discussions the council members asked Whiting to present a settlement offer to the City in writing. Whiting prepared and presented to said Council Members a written offer to settle, setting forth specific terms and dollar amounts. In November all three Council Members individually stated that they agreed with the terms offered and that they would support accepting the offer in the next Council meeting.

58.     In late October Whiting's attorney began experiencing serious health issues, leading to open heart surgery on December 16, 2022. The statute of limitations for Whiting's defamation claims based upon the July 4, 2022, incident ran on January 4, 2023. All three council members named above were aware of attorney Irion's health issues in December. During December Whiting was repeatedly assured that the City would be accepting Whiting's offer to settle this and other lawsuits in one omnibus settlement agreement, for the amount set forth in Whiting's offer. The last week in December Whiting was informed that the three Council Members who

had agreed to settle for an amount certain, had reneged on their agreement to support same. This left Whiting's attorney less than a week to draft and file the instant lawsuit, from his recovery bed.

59.     Upon information and belief, the settlement "negotiations" made by the City in November and December of 2022 were made in bad-faith, with no intention at any time to consider accepting the offer solicited from Whiting.

60.     Upon information and belief, the settlement "negotiations" made by the City in November and December of 2022 were made with the specific intent of delaying Whiting's filing of the instant lawsuit until after the statute of limitations on Whiting's July 4 defamation claims had expired.

**Retaliation for Speaking at March and April, 2023, City Council Meeting**

61.     On March 21, 2023 Mr. Whiting attended the regular monthly public meeting of the Athens City Council. After being invited to the podium during the public speaking portion of the agenda, Whiting spoke to the Council about several topics. These topics included several actions that had been promised by three Council members prior to their recent election, including promises to settle all pending litigation by Whiting against the City. According to Whiting, many of the promised actions had not been taken, and were being ignored. Whiting's statements included an assertion that the City had already settled a lawsuit against it filed by recently-elected City Council Member and Vice Mayor Larry Eaton. Whiting also asserted that the City had refused offers to settle made by Whiting. After Whiting's statements Mayor Sherlin stated that, "There's more than one side to the story."

13

62.     Immediately after the meeting Mayor Sherlin posted on FaceBook several statements of fact about Whiting and about the history of settlement negotiations between the City and Whiting, regarding this lawsuit and all other lawsuits between the City and Whiting.

63.     Many of Sherlin's statements of fact were false and defamatory toward Whiting. For example, Sherlin accused Whiting three times of "twisting the truth" regarding the history of settlement discussions. He further said, "Both times we were advised that after repeated attempts to settle with Mr. Whiting he rejected terms and sought excessive amounts of money…Time and again we have tried to find a way to settle and yet Mr. Whiting persists by making new lawsuits against the City…We have tried he has denied and continues to twist the truth about whether or not we have made attempts to settle his lawsuits. We can only do what legal Counsel advises us to do and nothing more…Mr. Whiting's change of position on settlement negotiations are baffling to say the least. We have tried. I and the entire council have been completely transparent. We have made many positive changes that Mr. Whitng has pushed for, yet he is never satisfied, he now turns his displeasure on the new Council and on me, who all have tried to find resolution to these unending demands and lawsuits." Upon information and belief Mayor Sherlin knew at the time he made said statements that they were false.

64.     Upon information and belief, the City Mayor making false assertions of fact about settlement discussions between the City and Whiting regarding this lawsuit as well as other litigation between the plaintiff and the City, waives any and all privilege regarding communications about settlement between and by any and all City agents, including all communications between City agents and the City's attorneys regarding same. Said action also constitutes an exception to Federal Rule of Evidence 408 regarding all communications about settlement discussions between Whiting and all agents of the City. *See* Fed.R.Evid. 408(b).

65. On April 18, 2023, Whiting again attended the regular monthly meeting of the Athens City Council. Again, Whiting discussed the ongoing litigation against the City. After Whiting's comments Mayor Sherlin made false statements regarding the history of settlement negotiations between the City and Whiting. Specifically, Sherlin stated that Whiting had offered to settle for $0, then $10,000. Sherlin then stated that while the City was discussing Whiting's offer, Whiting reneged on said offer and demanded $375,000 to settle. Whiting had never offered to settle any lawsuit with the City for $10,000, or any amount near $10,000. While the City did offer to settle one minor public records lawsuit for costs, which were approximately $2,000 at that time, the City's offer required a statement that the City had made no violations of law, which it had. At that time Whiting asked to postpone depositions pending further settlement discussions. Attorney Pilkington refused.

66. Prior to and during every lawsuit filed by Whiting against the City of Athens, Whiting has been willing to consider reasonable settlement offers from the City. Whiting has made several very reasonable written offers to settle litigation with the City, all of which have been rejected by the City. In addition, Whiting has made several oral offers to settle, all of which were either rejected by the City, or completely ignored by the City.

67. The $375,000 offer to settle mentioned by Sherlin was made by Whiting following discussions with defendant Sherlin which ended in the Sherlin asking Whiting to make said offer in writing directly to City Attorney Hatchet. Whiting did. That offer included all pending litigation between Whiting and the City, with the exception of a previous Federal lawsuit that is currently on appeal before the 6th Circuit. The Council's request for that specific offer was made after the Council had ignored an offer to settle all pending litigation, including the Federal lawsuit on appeal, for $500,000.

15

68. On December 9, 2022, Whiting presented his written offer to settle for $500,000, following Whiting's personal communications with Athens City Council Members Larry Eaton, Dr. Dick Pelley, and Mayor Steve Sherlin. All three had personally agreed that it was acceptable, and stated that they would support accepting said offer. These three represent a majority of the five-Member Athens City Council. Later in December all three informed Whiting that the City would not accept said settlement. Whiting is informed by Sherlin that the Council's rejection of the previously approved offer was caused by the City's insurance company refusing to pay the settlement.

69. The statements made by Mayor Sherlin on FaceBook and at the March and April Council meetings were motivated, at least in part, by Sherlin's desire to punish Whiting in retaliation for Whiting exercising his right to free speech at said Council meetings and other forums. Said statements were also intended to discourage Whiting from publically speaking on said topics in the future.

70. Mayor Sherlin's attempt to convince the public that Whiting has refused to negotiate settlement and has arbitrarily changed his settlement offers, is malicious, harmful, and is the opposite of the truth. Sherlin's public defamation of Whiting is the latest in "an entire campaign of harassment." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982).

### First Cause of Action
### May 2023, Fireworks Cancellation Announcement
### First Amendment Retaliation

71. This first cause of action is alleged against defendants City of Athens, City Manager Mike Keith, in his individual capacity and in his official capacity as City Manager of the City of Athens, and City Fire Chief Brandon Ainsworth in his individual capacity and in his official capacity as Fire Chief. The actions of these defendants, as set forth in the paragraphs above,

16

which are fully incorporated herein, entitle the plaintiff to a remedy under 42 U.S.C. § 1983 because the defendants have, under color of state law, violated Plaintiff's clearly established rights to petition the government for redress of grievances and to be free from retaliation for same pursuant to the First Amendment to the United States Constitution as applied to the states and their political subdivisions.

72.     As with other types of First Amendment Retaliation claims, "To prevail on [a] retaliation claim, [p]laintiffs must establish (i) that they were engaged in constitutionally protected conduct; (ii) that Defendants' adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and (iii) that the adverse action was motivated at least in part as a response to the exercise of their constitutional rights." *Lucas v. Monroe County*, 203 F.3d 964, 973 (6th Cir. 2000). In the instant lawsuit Glenn Whiting has engaged in constitutionally protected conduct by filing numerous legitimate lawsuits against the City of Athens. In response to said constitutionally protected activity, the defendants punished Whiting by making false public statements about Whiting for the purpose of turning public opinion against Whiting, to discourage Whiting from filing similar petitions, to pressure Whiting into dismissing his legitimate legal claims against the City and its agents, to turn public opinion against Whiting's litigation with the City, to turn public opinion against Whiting's attempts to get the Athens City Council to change its policies challenged in said lawsuits, and to turn public opinion against Whiting's attempts to get the Athens City Council to settle said lawsuits. Specifically, the defendant City falsely blamed its cancellation of the 2023 fireworks on Whiting and his lawsuits; it then encouraged members of the public to contact Whiting and urge him to dismiss his legitimate lawsuits. Such false statements about the cause of the fireworks event cancellation, made by a City Manager on behalf of the City, would

17

chill a person of ordinary firmness from continuing to engage in discussing the subject matter at future Council meetings. The false public statements by the City Manager were motivated by his desire to pressure Whiting into voluntarily giving up a fundamental right as protected by the Constitution. Said false statements were made by defendant Keith, in his capacity as City Manager for Athens.

73.     The defendants, acting under color of law, intentionally deprived the plaintiff of his right to petition and his right to be free from retaliation for same, by falsely blaming the plaintiff of causing the City to cancel a very popular annual event. Said false accusations and defamatory statements were intended to, and did, punish the plaintiff for petitioning this Court for redress of grievances.

74.     Defendant Keith, as City Manager, is a final policy-maker for the City of Athens. Therefore, the statements made publically by Keith, and asserting the perspective of "the City" in same, amount to an individual administrative action taken by a final policy maker. Due to the authority granted to said defendant by the Athens Charter, said individual actions had the force law.

75.     The defendants, acting under color of law, intentionally deprived the plaintiff of his right to petition the government and be free from retaliation for same.

76.     Upon information and belief, defendant Keith made said statements with malicious intent toward the plaintiff. As a direct result of defendants' actions, the plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to injunctive and declaratory relief, damages, including punitive damages, and reasonable attorneys' fees, pursuant to Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. § 2201; to redress and remedy the

18

violations, and to prevent irreparable harm and future violations of his rights and the rights of others.

## Second Cause of Action
## Defamation

77.    The plaintiff incorporates all of the preceding paragraphs of this complaint as if fully set forth, verbatim, here.

78.    This second cause of action is alleged against defendants City of Athens and Mike Keith. Defendant Keith, acting on behalf of the City, communicated statements of fact about the plaintiff. Specifically, that Whiting's lawsuits forced the City of Athens to cancel its annual fireworks display.

79.    Said statements were made to reporters for the Daily Post Athenian, Channel 6 News in Chattanooga, and other people, via emails, internet posts, and verbal statements.

80.    Said statements were all false.

81.    Keith knew at the time that he made said statements that said statements were false.

82.    Alternatively, at the time the defendants made said statements, they were reckless and/or negligent as to the truthfulness of said statements.

83.    Upon information and belief, the statements of the defendants described herein were motivated by the actual malice of the defendants toward the plaintiff.

84.    The plaintiff has been damaged, has suffered impairment of reputation and standing in the community, personal humiliation, and mental anguish, all solely because of the unlawful actions of the defendants described herein.

19

**Third Cause of Action**
**Injunctive and Declaratory Relief**

85.      The plaintiff incorporates all of the preceding paragraphs of this complaint as if fully set forth, verbatim, here.

86.      T.C.A. §§ 29-14-100 et seq. grants this Court authority to determine facts and declare the acts of the defendants, as set forth herein, to be in violation of the plaintiff's rights, and to enjoin the defendants from continuing to take said actions and similar actions.

87.      The plaintiff has been injured and aggrieved by and will continue to be injured and aggrieved by the defendants' violations of his rights, absent injunction of this Court and declaratory finding of this Court that the defamatory accusations of the defendants were and are false.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS the following:

1. That a summons and a copy of this Complaint be issued and served upon each defendant and that they be required to answer within the time and in the manner provided by the Tennessee Rules of Civil Procedure;

2. Plaintiffs demand a jury to try this case;

3. That this Court grant a judgment against defendants for plaintiff's nominal damages of $1;

4. That this Court grant a judgment against defendants for punitive damages in an amount according to proof, calculated to discourage similar behavior of the defendants and others in the future;

5. That this Court enter preliminary and permanent injunctive relief, prohibiting the defendants from making further false statements against the plaintiff, and prohibiting the defendants from further harassing the defendant;

6. That this Court enter a declaratory judgment finding that the actions of the defendants were illegal and in contravention of plaintiff's rights;

7. That this Court award plaintiff the reasonable attorney's fees he has incurred in prosecution of this lawsuit, pursuant to 42 U.S.C. § 1988;

8. That this Court award plaintiff all the discretionary cost of this cause, including any filing fees, court costs, and reporter costs, transcripts, and expert fees; and

9. That this Court grant such other relief both special and general to which plaintiffs may prove to be entitled.


Respectfully submitted,

 s/Van R. Irion_____
Van R. Irion (BPR#024519)
Law Office of Van R. Irion, PLLC
800 S. Gay St., Suite 700
Knoxville, TN 37929
Attorney for Plaintiff
(865) 766-4040