UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| GLENN WHITING, | ) | |
| --- | --- | --- |
| | ) | Case No. 3:23-cv-220 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| CITY OF ATHENS, MIKE KEITH, and BRANDON AINSWORTH | ) ) | |
| | ) | |
| *Defendants*. | | |

## MEMORANDUM OPINION

Before the Court is Defendants Brandon Ainsworth, City of Athens, and Mike Keith's joint motion to dismiss (Doc. 10) all claims against them. For the reasons that follow, the Court will **GRANT** the motion (*id.*). Because no more claims remain against any parties, this matter will be **DISMISSED**. The dismissal of this action renders Whiting's pending motion for leave to file an interlocutory appeal (Doc. 25) **MOOT**.

I. **BACKGROUND**

Every Fourth of July, the City of Athens, Tennessee ("City") puts on a fireworks show for the public to enjoy. (Doc. 1, at 2–3.) But when the City elected to limit the show's ("Event") attendance to City employees and guests in 2022, Glenn Whiting set out to "video record the event so that [] excluded [] citizens could know what their City employees were doing in the closed park." (*Id.* at 6.) Whiting's presence at the Event did not go unnoticed; at least half a dozen City employees or guests confronted him and asked him to stop filming children at the Event. (*Id.* at 7–11.) On January 3, 2023, Whiting filed suit against the City and various City

employees (including firefighters), alleging multiple causes of action relating to his experience at the Event. That matter is still pending before this Court. (*See* Case No. 3:23-cv-2.)

Over four months after Whiting filed the lawsuit and nearly a year after the Event, local news outlets reported that the City would not be holding its annual fireworks show in 2023 due to Whiting's pending case. (*Id.* at 4.) Specifically, ABC Channel 9 News ("ABC") reported:

> There won't be any fireworks at the Athens Regional Park on July 4th this year, and we now know the reason why. A man's pending lawsuit against several city officials over what happened at last year's event is cited as the reason. We obtained that lawsuit on Wednesday, which you can read in full below.

(*Id.*) The online article ("Announcement') features a link to the original complaint filed in Case No. 3:23-cv-2. (*Id.*)

According to Whiting, ABC obtained this information on May 18, 2023, from Defendant Mike Keith, who served as interim City Manager at the time. (*Id.* at 1, 3–4.) Before speaking with ABC, Keith had met with Defendant Brandon Ainsworth, then the City Fire Chief, who allegedly "informed Keith that he did not want to . . . order [City] firefighters to provided [sic] emergency protection at the 2023 Independence Day event." (*Id.* at 2, 4.) Whiting's suit over the Event included City firefighters as defendants. (*See* Case No. 3:23-cv-2.)

The Announcement drew increased public attention to Whiting. (*Id.* at 4–5.) After the Announcement, "[n]umerous members of the public [] contacted Whiting" urging him to drop his lawsuit to allow for the City fireworks display to go on. (*Id.* at 5.) For instance, a representative of the company that has historically provided liability insurance to the City for the fireworks display phoned Whiting and asked him to dismiss all suits pending against the City. (*Id.*) City community members also posted comments on social-media sites "both blaming Whiting for the cancellation and urging him to dismiss his cases." (*Id.*) Despite this attention, Whiting "informed all individuals who contacted him that he would not be extorted by public

pressure from the City to dismiss his legitimate petitions to the government for redress of grievances." (*Id.*) Nonetheless, Whiting attests he has "suffered impairment of reputation and standing in the community, personal humiliation, and mental anguish" due to the Announcement. (*Id.* at 19.)

On June 22, 2023, Whiting brought another action—this one—asserting claims for First Amendment retaliation against the City, Keith, and Ainsworth ("Defendants") and for state-law defamation against the City and Keith.[1] (Doc. 1, at 16–20.) At the same time, Whiting filed yet another case, which also remains pending before this Court, alleging First Amendment retaliation and state-law defamation against the City and City Mayor Steve Sherlin for comments Sherlin made regarding settlement negotiations between Whiting and the City.[2] (*See* Doc. 1 in Case No. 3:23-cv-221.) On July 20, 2023, Defendants collectively moved to dismiss all claims against them in this case. (Doc. 10.) The motion is ripe for the Court's review.

## II.    STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

---

[1] Whiting also brings a "cause of action" for injunctive and declaratory relief. (Doc. 1, at 20.) Because this is a form of a relief requested rather than a separate cause of action, the Court does not include it in this list.

[2] According to Defendants, Whiting has filed nine total lawsuits against the City or City employees since 2020. (Doc. 11, at 1.)

*Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(c). A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to 12(b)(6) motions for failure to state a claim. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Thus, on a Rule 12(c) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. For purposes of this determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007)). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "A motion brought pursuant to

Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549.

III.    **ANALYSIS**

Whiting asserts claims for First Amendment retaliation against all Defendants and for state-law defamation against Keith and the City. (Doc. 1, at 16–20.) Defendants argue that the entirety of Whiting's complaint should be dismissed because it fails to sufficiently allege either claim; Defendants also claim they are entitled to reimbursement of attorney's fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Tennessee Code Annotated § 29-20-113. (Doc. 11, at 3, 15.)

A.    **First Amendment Retaliation**

i.    *Official-Capacity Claims*

Whiting's First Amendment retaliation claim is brought pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

To succeed on a claim under § 1983, a plaintiff must show: (1) "that he or she was deprived of a right secured by the Constitution or laws of the United States" and (2) "that the deprivation was caused by a person acting under color of law."[3] *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted).

---

[3] Only the first element is at issue in this case, as Defendants do not appear to dispute that they were acting under color of law when participating in the alleged adverse actions. (*See generally* Doc. 11.)

Though Whiting brings claims against Defendants in their official and individual capacities, the Court will **DISMISS** all official-capacity claims against them as redundant of those brought against the City. *See Graham*, 473 U.S. at 165 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity."); *Scott*, 2011 WL 2515976, at *3 (observing that courts within the Sixth Circuit typically dismiss official-capacity claims as redundant where the relevant local-governmental entity is also a party) (collecting cases); *see also Jackson v. Shelby Cty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) ("[T]he district court properly granted summary judgment to the defendants on the claims against the sheriff in his official capacity because those claims mirror the claims against the County, and are therefore redundant."); *White v. Washington Cty., Tenn.*, 85 F. Supp. 3d 955, 959 (E.D. Tenn. 2015); *Newby v. Sharp*, No. 3:11-cv-534, 2012 WL 1230764, at *4 (E.D. Tenn. Apr. 12, 2012).

### ii.     *Individual-Capacity Claims*

Whiting argues that Defendants illegally retaliated against him for engaging in "constitutionally protected conduct [of] filing numerous legitimate lawsuits against the City" by "making false public statements about Whiting for the purpose of turning public opinion against [him]," pressuring him to dismiss said lawsuits, and discouraging him from "filing similar petitions." (Doc. 1, at 17.) The allegedly false statements—that Whiting's suits were the reason the City cancelled the annual fireworks display—were "motivated by [the City Manager's] desire to pressure Whiting into voluntarily giving up a fundamental right" to petition the government. (*Id.* at 17–18.)

Defendants move to dismiss Whiting's First Amendment retaliation claims against them, arguing that Ainsworth and Keith's actions were not sufficiently adverse or motivated by

Whiting's litigation against the City. (Doc. 11, at 4–10.) And because neither Ainsworth nor Keith committed a constitutional violation, Defendants argue, the City also cannot be held liable for First Amendment retaliation. (*Id.* at 10.)

"[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *see also Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir. 1997) ("[T]he injury asserted is the retaliatory accusation's chilling effect on [Plaintiff's] First Amendment rights . . . We hold that [his] failure to demonstrate a more substantial injury does not nullify his retaliation claim."), *cert. denied,* 524 U.S. 936 (1998). In order to prevail on a retaliation claim, a plaintiff must establish that: (1) he was engaged in constitutionally protected conduct; (2) the defendant's adverse action caused him to suffer "an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action "was motivated at least in part as a response to the exercise of [the plaintiff's] constitutional rights." *Lucas v. Monroe Cnty.*, 203 F.3d 964, 973 (6th Cir. 2000). The satisfaction of some elements is context-dependent and requires consideration of the encounter's unique setting. *Thaddeus-X*, at 388–89 ("Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether the activity is 'protected' or an action is 'adverse' will depend on the context.").

The Court will first address whether Whiting's conduct was constitutionally protected, but its First-Amendment-retaliation analysis will center on whether Defendants' statements were sufficiently adverse.

### a. Whether Whiting was Engaged in Constitutionally Protected Conduct

To allege a First Amendment retaliation claim, a plaintiff must first establish that he was engaged in conduct protected by the First Amendment. *Thaddeus-X*, 175 F.3d at 394–95. Here, Whiting argues he was engaged in the protected activity of "filing numerous legitimate lawsuits against the City." (Doc. 1, at 17.) For the sake of the present motion, Defendants do not contest that Whiting has sufficiently alleged he was engaged in constitutionally protected activity when he filed suit against the City. (Doc. 11, at 5.)

A citizen's right to petition the government is a well-worn constitutional freedom. *See McDonald v. Smith*, 472 U.S. 479 (1985); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61 (1993). Therefore, Whiting has plausibly alleged that he engaged in behavior insulated by the First Amendment.

### b. Whether Defendants' Conduct was Sufficiently Adverse

To survive a 12(b)(6) motion on his First Amendment retaliation claim, Whiting must also plausibly allege that he suffered an adverse action "that would deter a person of ordinary firmness from continuing to engage in [the constitutionally protected] conduct." *Thaddeus-X*, 175 F.3d at 394; *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). "Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583–84 (6th Cir. 2012) (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). But if a "plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a '*de minimis* injury,' the claim is properly dismissed as a matter of law." *Id.* at 584 (citing *Bell*, 308 F.3d at 603, 606). After all, "[t]here is, of course, a *de minimus* level of imposition with which the Constitution is not concerned," and courts must take care "to ensure that real injury is involved" so as to not "trivialize the First Amendment by

sanctioning a retaliation claim even if it is unlikely that the exercise of . . . rights was actually deterred." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also Thaddeus-X*, 175 F.3d at 396 ("It is not necessarily true . . . that every action, no matter how small, is constitutionally cognizable."); *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 397). Because the test is an objective one, "the issue is whether a person or ordinary firmness would be deterred, not whether the [plaintiff] himself actually was deterred.'" *Holzemer*, 621 F.3d at 525 (citing *Harris*, 513 F.3d at 519). However, the fact that a plaintiff was not in fact deterred by the adverse action can support the conclusion that a person of ordinary firmness would not be deterred or chilled by the conduct. *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012) ("Our conclusion [that a person of ordinary firmness would not be deterred by the adverse conduct] is supported by the fact that [the plaintiff] was not deterred or chilled in the exercise of his First Amendment rights as the result of defendants' wrongful conduct.").

     1.  Mike Keith

  Defendants argue Whiting's First Amendment retaliation claim fails because Keith's statements to news outlets regarding the effect of Whiting's litigation on the City's firework display were not sufficiently adverse to satisfy the second element. (Doc. 11, at 5–6.)

  In *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012), the Sixth Circuit distinguished between adverse actions causing substantial harm versus having only a *de minimis* impact. The adverse action at issue in that case was the defendants' performance of several online database searches under the plaintiff's name without his knowledge. *Id.* at 584. In comparison to Sixth Circuit cases in which a defendant did take sufficiently adverse action, the court observed that the database searches did not cause the plaintiff to "suffer a threat to his

9

economic livelihood," subject him to defamation, require him to "endure a search or seizure of property," or force him to "experience the public disclosure of intimate or embarrassing information." *Id.* (citations omitted). Though the plaintiff alleged that the searches caused him to suffer "emotional distress, harassment, personal humiliation, and embarrassment," the court found these allegations to be "too generalized to withstand judgment on the pleadings." *Id.* (internal quotation marks omitted) (first citing *Mezibov*, 411 F. 3d at 722; and then citing *Mattox v. City of Forest Park*, 183 F. 3d 515, 523 (6th Cir. 1999)). For good measure, the court acknowledged it has once before "held that embarrassment and humiliation may be sufficient to establish a First Amendment retaliation claim," but cabined that holding to the circumstances of the case, in which there was a public disclosure of intimate information regarding a rape. *Id.* (citing *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998)). Given this circumscribed context, the Sixth Circuit has since declined to recognize even the public disclosure of a private report detailing a "traumatic childhood incident" as sufficiently adverse, despite acknowledging the plaintiff might have suffered embarrassment as a result. *Id.* (citing *Mattox v. City of Forest Park*, 183 F. 3d 515, 522 (6th Cir. 1999)).

In this case, Keith's statement attributing the City's fireworks-cancellation decision to Whiting's pending litigation does not rise to level of adversity needed to state a claim for First Amendment retaliation. Keith merely informed news outlets of the reason the City was no longer planning to host a fireworks display, which appeared to be an inability to staff the event for fear of ending up on the other side of another of Whiting's lawsuits.[4] Any embarrassment or

---

[4] Keith's actions have not deterred Whiting from plunging forward in his litigation against the City and its agents. Despite Whiting's insistence that he is "NOT an ordinary citizen," his persistence in and ability to litigate these actions supports the Court's conclusion that a person of ordinary firmness would not be deterred by Defendants' communications. *See Wurzelbacher*,

discomfort stemming from such an announcement is *de minimis*. *Cf. McComas v. Board of Educ., Rock Hill Local Sch. Dist.*, 422 F. App'x 462, 469 (6th Cir. 2011) (observing that a public statement characterizing a plaintiff as the "initial aggressor" was "not sufficiently embarrassing to constitute an adverse action" for First Amendment retaliation purposes). The fallout from that public announcement—an influx of phone calls and social-media posts urging Whiting to drop the suits in hopes the display could take place—did not cause Whiting to "suffer a threat to his economic livelihood," subject him to defamation,[5] or require him to "endure a search or seizure of property." *See Wurzelbacher*, 675 F.3d at 584. Rather, Whiting generally alleges he has "suffered impairment of reputation and standing in the community, personal humiliation, and mental anguish" due to the Announcement. (*Id.* at 19.) While the negative attention may have caused him emotional stress, that stress did not arise from the disclosure of intimate or embarrassing private information; the filing of a lawsuit is public information, as evidenced by ABC's inclusion of the complaint in its Announcement. *See Kutchinski v. Cairy*, No. 22-10045, 2022 WL 17540157, at *6 (E.D. Mich. Dec. 8, 2022) (noting that a federal case is a "matter of public record"); *contra. Bloch*, 156 F.3d at 683 (finding the public disclosure of a report including details of a rape to be a sufficiently adverse action). And Whiting's broad gesture to reputational damage is not enough to shoulder an adverse-action showing. *See Mattox*, 183 F. 3d at 522 (noting that the plaintiff "offers only generalized statements about the effect [of the alleged adverse action] on her character and reputation, about being held up to 'ridicule, contempt, shame, and disgrace,' and about the effect on her respectability, comfort, and position

---

675 F.3d at 585 ("Our conclusion [that a person of ordinary firmness would not be deterred by the adverse conduct] is supported by the fact that [the plaintiff] was not deterred or chilled in the exercise of his First Amendment rights as the result of defendants' wrongful conduct."); (Doc. 16, at 9 (emphasis in original).)

[5] *See infra* Section III.B.

in society"); *Kutchinski*, 2022 WL 17540157, at *6 (finding that a plaintiff failed to state a viable First Amendment retaliation claim where the alleged adverse action was the public communication of a pending federal suit). As a result, Whiting has not plausibly alleged that Keith's statements constituted an adverse action with more than a *de minimis* impact.

        2.      *Brandon Ainsworth*

Defendants similarly argue that Ainsworth's alleged conversation with Keith cannot rise to an adverse action for First Amendment retaliation purposes. (Doc. 11, at 9–10.) They also note the dearth of allegations against Ainsworth in the Complaint, which they argue underscores Whiting's failure to comply with federal pleading standards. (*Id.*)

Even giving Whiting the benefit of the doubt and assuming he actually directed a First Amendment retaliation claim towards Ainsworth, the alleged conversation between Ainsworth and Keith is not an adverse action. If Keith's statements could result in, at most, *de minimis* harm, Ainsworth's are capable of even less damage. From Whiting's telling, Ainsworth's statement was not made to various media outlets, but to a single individual. He explained that, reasonably so, he did not want to order City firefighters to staff the annual fireworks event after the previous Event's drama and resulting litigation. As with Keith's statement, Ainsworth's words did not cause Whiting to "suffer a threat to his economic livelihood," subject him to defamation,[6] or require him to "endure a search or seizure of property." *See Wurzelbacher*, 675 F.3d at 584. Because the statement cannot qualify as an adverse action, Whiting fails to plausibly allege a First Amendment retaliation claim against Ainsworth.

---

[6] Whiting did not assert a defamation claim against Ainsworth. (*See generally* Doc. 1.)

3. *The City*

To state a claim for municipal liability, a plaintiff must adequately plead an underlying constitutional violation. *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019) (citing *Robertson v. Lucas*, 753 F. 3d 606, 622 (6th Cir. 2014)). Because Keith and Ainsworth's actions were not sufficiently adverse to allege a First Amendment retaliation claim, Whiting's claim against the City must also fail.[7] [8]

---

[7] Because the Court finds Whiting's First Amendment retaliation claims fail based on its analysis of the second element, it need not evaluate whether Whiting has plausibly alleged that Defendants' conduct was motivated by Whiting's protected behavior.

[8] In litigating the three cases currently pending before this Court (Case Nos. 3:23-cv-2, 3:23-cv-220, 3:23-cv-221), Whiting has insisted that he is entitled to the Court's collective consideration of the facts underlying each case as part of the City's "ongoing campaign of harassment" against him. (*See, e.g.*, Doc. 69, at 4 in Case No. 3:23-cv-2 (urging the Court to allow amendment of his complaint in his initial filing to include the details underlying the present case because the proposed and original claims "all constitute an entire campaign of harassment").) As the Court stated when overruling Whiting's objections to Magistrate Judge Poplin's order denying leave to amend, "Whiting has no such 'right.'" (Doc. 81, at 10 (explaining why *Bart v. Teleford*, 677 F. 2d 622, 625 (7th Cir. 1982), a case cited by Whiting for the proposition that a plaintiff has a right to present evidence of a campaign of harassment, does not entitle him to have all claims heard together).)

Whiting attempts to weave a thread between three discrete events: (1) City officials' actions towards him at the Event last year; (2) Keith's and Ainsworth's communication about cancelling the 2023 fireworks display; and (3) Mayor Sherlin's public remarks about settlement negotiations with Whiting. But the latter two events occurred nearly a year after the first and were allegedly in retaliation for different protected behavior. *See Meeks v. Schofield*, 10 F. Supp. 3d 774, 786 (M.D. Tenn. 2014), *aff'd*, 625 F. App'x 697 (6th Cir. 2015) (finding it "inappropriate to consider all the allegations as supporting one retaliation claim" when "the events occurred in some cases many months separately from each other, and in retaliation, allegedly, for different events"); (*Compare* Doc. 44-1, at 23 (alleging that Mayor Sherlin retaliated against Whiting for "speaking with individuals and Council Members at the Athens City Council's regular public monthly meeting"), *with* Doc. 44-1, at 16 (alleging that the City retaliated against Whiting for "recording and reporting events [at the Picnic], and by speaking with individuals at the [Picnic]").) The Court is thus not required to collectively consider facts at the heart of the three separate lawsuits currently pending before it. Furthermore, the Court has allowed Whiting's First Amendment retaliation claims related to the Event proceed. (*See* Doc. 113 in Case No. 3:23-cv-2.) To again consider the allegedly adverse actions at issue in that case in conjunction with those now before the Court would be needlessly duplicative and would change nothing about the Court's analysis of the instant motion.

### B. State-Law Defamation

Whiting also brings state-law defamation claims against the City and Keith, alleging that "Keith, acting on behalf of the City, communicated . . . that Whiting's lawsuits forced the City of Athens to cancel its annual fireworks display." (Doc. 1, at 19.) Defendants argue that the City is immune from suit for defamation under Tennessee law and that Keith's statement is neither defamatory nor capable of conveying defamatory meaning. (Doc. 11, at 11–13.)

Under Tennessee law, a plaintiff pursuing a defamation claim must show that: "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999). "A claim for common law defamation may be based upon written (libel) or spoken (slander) words." *Battle v. A & E Television Networks, LLC*, 837 F. Supp. 2d 767, 770 (M.D. Tenn. 2011) (citing *Quality Auto Parts Co., Inc. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994)). "Whatever the method utilized, 'the basis for an action for defamation . . . is that the defamation has resulted in an injury to the person's character and reputation.'" *Finley v. Kelly*, 384 F. Supp. 3d 898, 906 (M.D. Tenn. 2019) (quoting *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001)). It is a question of law for a court whether a communication has the capacity to be understood as defamatory. *Pate v. Service Merch. Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996).

In determining whether a communication is capable of being understood as defamatory, Tennessee courts "have consistently followed the prevailing common-law practice of construing the allegedly libelous words in their 'plain and natural' import." *McWhorter v. Barre*, 132 S.W.3d 354, 364 (Tenn. Ct. App. 2003) (quoting *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412,

419 n.7 (Tenn. 1978)). Rather than merely cause annoyance, offense, or embarrassment, defamatory remarks "must be reasonably construable as holding the plaintiff up to public hatred, contempt, or ridicule. They must carry with them an element of disgrace." *Id.* (internal quotation marks omitted) (quoting *Stones River Motors, Inc. v. Mid-S. Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983), *abrogated on other grounds as recognized by Zius v. Shelton*, No. E1999-01157-COA-R3-CV, 2000 WL 739466, at *3 (Tenn. Ct. App. June 6, 2000)).

### i. Mike Keith

Taking the facts as pled, Whiting has not plausibly alleged that Keith's statements to local media are defamatory. Communicating that the City would not be hosting the same event that precipitated Whiting's suit against it is not "reasonably construable as holding the plaintiff up to public hatred, contempt, or ridicule," nor does it bring with it any "element of disgrace." *See McWhorter*, 132 S.W.3d at 364 (citations omitted). As Defendants note, the statement is merely one of "cause and effect": the events of the prior year's fireworks display, with Whiting at their center, led the City to conclude that the risks of rehosting the event outweighed the benefits. (Doc. 11, at 14.) Taken at their "plain and natural import," Keith's words provide an innocuous explanation to the public for why the City will not be hosting a fireworks display this year. Just because the statement was communicated to the public and mentioned Whiting by name does not mean it is defamatory in nature; nor does his expressed discomfort with the statement and the publicity it attracted make it so. *See Davis v. Covenant Presbyterian Church of Nashville*, No. M2014-02400-COA-R9-CV, 2015 WL 5766685, at *4 (Tenn. Ct. App. Sept. 30, 2015) (finding that the fact a plaintiff understood a particular communication discussing lawsuits he filed to be defamatory did not mean it could be "reasonably construed as

defamatory"). Because Keith's communication to local media cannot be construed as defamatory, Whiting has not pled a state-law defamation claim against him.

### ii. The City

Whiting also brings a state-law defamation claim against the City. (Doc. 1, at 19.) Defendants contend that Tennessee Code Annotated § 29-20-201—the Tennessee Governmental Tort Liability Act ("TGTLA")—protects the City from liability. (Doc. 11, at 11.)

The TGTLA governs tort liability for Tennessee's governmental entities and employees and provides, with some exceptions, that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). In addition to affording immunity to governmental entities, the TGTLA also extends immunity to employees of those entities when the TGTLA "removes" governmental-entity immunity: "No claim may be brought against an employee . . . [when] the immunity of the governmental entity is removed by [the TGTLA.]" *Id.* § 29-20-310(b). In other words, the TGTLA does not provide governmental entities and employees with simultaneous immunity; when the TGTLA "removes" immunity for the governmental entity, a governmental employee may be held liable. *See Taylor v. Harsh*, No. M2019-01129-COA-R3-CV, 2020 WL 864989, at *4 (Tenn. Ct. App. Feb. 21, 2020); *Colson v. City of Alcoa*, No. 3:16-cv-377, 2017 WL 1730911, at *12 (E.D. Tenn. May 2, 2017). One instance in which the TGTLA "removes" governmental-entity immunity is for an "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," *except* when the injury arises out of "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel,

slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2).

The City is a governmental entity as defined by the TGTLA, and the statute's provisions specifically prohibit suits against a governmental entity for libel, slander, and other intentional torts. *See id.*; *see also Iles v. Metro. Gov't of Nashville & Davidson Cnty.*, 500 F. Supp. 3d 711, 716 (M.D. Tenn. 2020) (noting that defamation (libel and slander) is specifically listed as "exceptions-to-the-exception to sovereign immunity" in Tenn. Code Ann. § 29-20-205(2)); *Bly v. Keesling*, No. E2002-01115-COA-R3CV, 2002 WL 31863297, at *6 (Tenn. Ct. App. Dec. 23, 2002) ("The [TGTLA] specifically prohibits claims against a governmental entity for, among other things, libel and slander. Since Plaintiff's defamation claim actually is a claim for libel and/or slander against the City of Kingsport, it is barred by [the TGTLA].") (internal citations omitted); *Sides v. Cooper*, No. W2011-00813-COA-R3CV, 2011 WL 6712717, at *2 (Tenn. Ct. App. Dec. 21, 2011) ("The case at bar involves a tort claim brought against a governmental entity, and[,] therefore, it is governed by the [T]GTLA.") (citation omitted). Therefore, the TGTLA insulates the City from suit.[9]

---

[9] Though Whiting mounts no defense to the City's immunity argument, there is reason to believe the TGTLA may not apply when the relief sought is primarily declaratory or injunctive, as it is here. *See, e.g.*, *Van Winkle v. City of Lavergne*, No. M2000-01784-COA-R3-CV, 2001 WL 1141349, at *3 (Tenn. Ct. App. Sept. 27, 2001) (noting that the Tennessee Court of Appeals has before "determined that the [T]GTLA does not provide a county immunity in an action for a declaratory judgment" when the plaintiff sought "a declaration that certain roads were public roads" because "the case did not contain allegations of tortious activity, nor did it seek to impose liability") (citing *Hackett v. Smith Cnty.*, 807 S.W.2d 695 (Tenn. Ct. App. 2001)); *Peterson v. Putnam Cnty.*, No. M2005-02222-COA-R3CV, 2006 WL 3007516, at *11 (Tenn. Ct. App. Oct. 19, 2006) (acknowledging that Tennessee courts have held that "an *equitable action to abate* a nuisance created by a governmental entity is permitted outside of terms of the [T]GTLA" and that "nothing in the [TGTLA] removes the inherent power of a court of equity to abate a nuisance created by a governmental entity") (citation and quotation marks omitted). However, this exception appears to be limited to circumstances in which either (1) "the case did not contain

Even if the TGTLA did not apply, Whiting failed to state a claim against the City for state-law defamation. Whiting alleges in his complaint that "Keith, acting on behalf of the City, communicated statements of fact about [Whiting]" that were defamatory. (Doc. 1, at 19.) But, as analyzed above, none of Keith's statements—the only City employee against whom Whiting brought a defamation claim in this action—can, as a matter of law, be understood as defamatory. *See Shull v. Walgreen Co.*, 782 F. App'x 373, 376–77 (6th Cir. 2019) (imputing the plaintiff's actions to the city in the context of a Tennessee state-law defamation claim). Nor is the Court obligated to collectively consider the defamatory nature of all statements referenced throughout the three suits Whiting filed in this Court that are potentially attributable to the City. *See supra* Section III.A.i.a.3. Therefore, Whiting's defamation claim against the City fails.

---

allegations of tortious activity" or (2) the plaintiff seeks equitable relief to abate a city-caused nuisance. *See Van Winkle*, 2001 WL 1141349, at *3; *Peterson*, 2006 WL 3007516, at *11. This case does not fall into either limited context; defamation plainly constitutes tortious conduct, and this is not a nuisance action. Outside those contexts, Tennessee courts have refrained from addressing whether the TGTLA applies when a complaint seeks only equitable relief. *See Smith v. Maury Cnty.*, No. 01A01-9804-CH-00207, 1999 WL 675135, at *3 (Tenn. Ct. App. Sept. 1, 1999) ("We take no position on whether a plaintiff would also have to comply with the GTLA if the complaint sought only injunctive relief.").

Moreover, the Sixth Circuit has recognized that, barring narrow exceptions, "equity does not enjoin a libel or slander [action] and that the only remedy for defamation is an action for damages." *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990). Unless a "narrow and limited injunction" is necessary upon a determination that the issued statements are "false and libelous," granting such relief "runs afoul of the First Amendment and constitutes a prior restraint on what might otherwise be lawful speech." *Saidak v. Schmidt*, 501 F. Supp. 3d 577, 596 (E.D. Tenn. 2020) (quoting *Williams v. Rigg*, 458 F. Supp. 3d 468, 478 (S.D. W. Va. 2020)) (internal quotation marks omitted). Here, Whiting seeks to enjoin Defendants from further speech before the at-issue statements have been found unconstitutional. Granting such a request would impermissibly encroach on Defendants' own First Amendment rights, and the Court would be loath to permit Whiting to side-step the TGTLA's grant of immunity due to his improper request for relief.

## C. Attorney Fees and Costs

Defendants request an award of the attorney fees and costs incurred in defending this action pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Tennessee Code Annotated § 29-20-113. (Doc. 11, at 15.) However, Whiting failed to acknowledge this request in his response. (*See generally* Doc. 16.) To allow opportunity for both parties to fully brief the issue, Defendants are **ORDERED** to file a separate motion for attorney's fees in accordance with the Federal Rules of Civil Procedure.

## D. Leave to Amend

Whiting devotes a few lines at the end of his response brief to requesting leave to amend his complaint in the event the Court finds it deficient. (Doc. 16, at 15.) In support of his request, Whiting cites a D.C. Circuit case for the proposition that "a plaintiff must be given a chance to amend the complaint before the district court dismisses an action with prejudice" and proposes the addition of certain factual allegations, including "that Ainsworth prompted and requested the retaliatory announcement" made by Keith. (*Id.* (citing *McCray v. Veneman*, 298 F. Supp. 2d 13 (D.D.C. 2002).)

Whiting is not entitled to amend his complaint. The Court retains discretion as to whether amendment is warranted and finds that, here, amendment would be futile. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971) (holding that leave to amend ultimately lies within a court's discretion). The incorporation of additional detail relating to Ainsworth's participation in the allegedly adverse action would not change the fact that the action is not sufficiently adverse. *See supra* Section III.A. Taking the proposed assertion as true, Ainsworth, at most, instructed Keith to communicate to local media that the City's annual fireworks display would not take place this year due to Whiting's pending lawsuits. (Doc. 16, at

19
Case 3:23-cv-00220-TRM-DCP   Document 34   Filed 10/18/23   Page 19 of 20   PageID #: 386

15.) For the same reason Keith's communication of this fact does not constitute a sufficiently adverse action against Whiting, Ainsworth's alleged behavior is *de minimis* for First Amendment retaliation purposes. *See supra* Section III.A. Because amendment would be futile, the Court **DENIES** Whiting's motion. (Doc. 16, at 15.)

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' joint motion to dismiss all claims against them (Doc. 10). The Court will also **DENY** Whiting's motion to amend his complaint (Doc. 15). Accordingly, the Court will **DISMISS WITHOUT PREJUDICE** all claims in this matter. Should they wish to seek attorney's fees, Defendants are **ORDERED** to file a separate motion in accordance with the Federal Rules of Civil Procedure. The dismissal of this action renders Whiting's pending motion for leave to file an interlocutory appeal (Doc. 25) **MOOT**.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**